[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, Slip Opinion No. 2022-Ohio-4237.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4237

THE STATE EX REL. HICKS, APPELLEE, *v.* CLERMONT COUNTY BOARD OF COMMISSIONERS, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, Slip Opinion No. 2022-Ohio-4237.]

*Open Meetings Act—R.C. 121.22—R.C. 121.22 requires public bodies in Ohio to conduct all deliberations on official business in meetings that are open to the public—No construction of the Open Meetings Act changes the default rule that a plaintiff alleging violations of the act bears the burden of proving the violations—Court of appeals' judgment affirming trial court's award of summary judgment and attorney fees to plaintiff reversed, and cause remanded to the trial court.*

(No. 2021-0611—Submitted April 26, 2022—Decided December 1, 2022.)

APPEAL from the Court of Appeals for Clermont County,

No. CA2020-06-032, 2021-Ohio-998.

_____

**FISCHER, J.**

{¶ 1} Ohio's Open Meetings Act, R.C. 121.22 ("the OMA"), requires public bodies in Ohio to conduct all deliberations on official business in meetings that are open to the public. And the OMA states that it "shall be liberally construed" to meet that end. *Id.* However, no construction of the OMA, even a liberal one, changes the default rule that a plaintiff alleging violations of the OMA bears the burden of proving the violations.

## I. Facts and procedural history

{¶ 2} Appellee, Christopher Hicks, filed a complaint in the Clermont County Court of Common Pleas alleging that appellant, Clermont County Board of Commissioners, violated the OMA on multiple occasions in 2017. Hicks alleged that the board had repeatedly entered executive session after passing motions that included a "laundry list" of reasons for entering executive session rather than identifying the specific issues it intended to discuss in executive session.

{¶ 3} The parties engaged in discovery, and each moved for summary judgment. The evidence presented by Hicks demonstrated that the board convened nine executive sessions in 2017 on motions to consider "the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of one or more public employees" under R.C. 121.22(G)(1). Neither side presented evidence showing what was actually discussed during those executive sessions, other than evidence that the board discussed an employee, D.R., on March 1, 2017, and notes taken by one of the board commissioners on June 7, 2017, that included a list of hotels. During depositions, the commissioners could not remember who or what was discussed during any of the executive sessions.

{¶ 4} In ruling on the motions for summary judgment, the trial court determined that under the Twelfth District Court of Appeals' decision in *State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 2012-Ohio-2569, 972 N.E.2d 115 (12th Dist.), the board failed to carry its burden to produce evidence showing that

it entered the executive sessions for a valid statutory reason and did not discuss improper topics during the sessions. Because the board presented no evidence of what it had discussed in the executive sessions, the trial court granted Hicks's motion for summary judgment on his claim regarding nine of the executive sessions and awarded him nearly $80,000 in attorney fees under R.C. 121.22(I)(2)(a).

{¶ 5} Applying the burden-shifting framework that it established in *Hardin*, the Twelfth District affirmed the trial court's judgment. 2021-Ohio-998, 171 N.E.3d 358, ¶ 25-40, 46. In *Hardin*, the Twelfth District created a burden-shifting framework for claims alleging violations of the OMA. The court required the plaintiff bringing an action under the OMA to initially carry the burden of production "by showing that a meeting of the majority of the members of a public body occurred and that the general public was excluded." *Hardin* at ¶ 25. If the plaintiff made that showing, the burden then shifted to the public body "to produce or go forward with evidence that the challenged meeting fell under one of the exceptions of R.C. 121.22(G)." *Id.* Finally, if the public body met its burden, the burden shifted back to the plaintiff to "come forward with evidence that the exception claimed by the public body is not applicable or valid." *Id.*

{¶ 6} Relying on the *Hardin* framework, the Twelfth District determined that Hicks had met his initial burden of production by submitting evidence that the nine executive sessions were meetings from which the public was excluded. *See* 2021-Ohio-998 at ¶ 14, 27-28. The appellate court then shifted the burden to the board and considered whether the board had produced evidence that the subjects discussed in the meetings fell within the statutory exceptions stated in its motions to enter executive session. *Id.* at ¶ 27, 40. Because the board commissioners could not recall what was discussed during the executive sessions, the court determined that the board did not meet its burden. *Id.* Further, the court said it would require the board to present evidence that it had discussed all the topics listed in its motions. *See id.* at ¶ 38, 41. The court held that R.C. 121.22(G)(1) and caselaw prohibited

the board from listing multiple purposes for entering executive session in an effort to ensure that it was "covered for all employment-related discussions." 2021-Ohio-998 at ¶ 38, 41. Therefore, the court concluded that the board had violated R.C. 121.22(G)(1), and it affirmed the trial court's summary-judgment award. 2021-Ohio-998 at ¶ 46.

{¶ 7} The Twelfth District also determined that the trial court did not abuse its discretion in awarding attorney fees to Hicks. *Id.* at ¶ 50-66. The appellate court noted that R.C. 121.22(I)(2)(a) authorizes a court to award reasonable attorney fees to a party who establishes a violation of the OMA. And it noted that a court may choose not to award attorney fees if it determines that a well-informed public body would reasonably believe that it was not violating the OMA and that the conduct that was the basis of the violation served public policy. 2021-Ohio-998 at ¶ 63; *see also* R.C. 121.22(I)(2)(a). The Twelfth District held that it was not reasonable for the board to believe that its conduct had complied with the OMA because, in the appellate court's view, R.C. 121.22(G)(1) required the board to "be specific when describing the reasons for moving into executive session instead of perfunctorily covering all possibilities." 2021-Ohio-998 at ¶ 64.

{¶ 8} We accepted the board's appeal, which raises three propositions of law. *See* 163 Ohio St.3d 1504, 2021-Ohio-2401, 170 N.E.3d 894.

## II. Analysis

### A. *First proposition of law: Burden of proof*

{¶ 9} In its first proposition of law, the board argues that "[w]hen a public body goes into executive session for a permitted reason under R.C. 121.22(G)(1), the burden remains throughout on the Relator to prove a violation of the [OMA]." Hicks argues that even if he ultimately bears the burden of persuasion on his claim, this court should adopt a burden-shifting rule that shifts the burden of production of evidence to the government, as the Twelfth District did in this case and in *Hardin*, 2012-Ohio-2569, 972 N.E.2d 115.

### *1. Common law and statutory language*

{¶ 10} The "burden of proof" " 'encompasses two different aspects of proof: the burden of going forward with evidence (or burden of production) and the burden of persuasion.' " *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 20, quoting *Chari v. Vore*, 91 Ohio St.3d 323, 744 N.E.2d 763 (2001); *see also State v. Robinson*, 47 Ohio St.2d 103, 107, 351 N.E.2d 88 (1976). "[T]he 'burden of persuasion' 'refers to the risk * * * borne by a party if the jury finds that the evidence is in equilibrium.' " (Ellipsis added in *Welsh-Huggins*.) *Welsh-Huggins* at ¶ 22, quoting *Robinson* at 107. And the burden of persuasion remains on one party throughout the entire case. *See id.* at ¶ 34. By contrast, the "burden of production" can shift between the parties. *See id.* at ¶ 33-35. The burden of production in a civil case requires that the plaintiff produce sufficient evidence to support his or her claims and that the defendant produce sufficient evidence of any affirmative defenses. *Id.* at ¶ 21.

{¶ 11} Furthermore, in accordance with common-law principles, the statutory provision authorizing citizens to sue public bodies for violations of the OMA clearly places the burden of proof, or at least the burden of persuasion, on the plaintiff. That provision states: "*Upon proof of a violation* or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions." (Emphasis added.) R.C. 121.22(I)(1). Therefore, to receive relief, the plaintiff must prove a violation of the OMA. There is no requirement for the public body to conversely prove that no violation occurred.

{¶ 12} Nor does the clause in R.C. 121.22(A) stating that the statute "shall be liberally construed" change the clear language of the statute. The liberal-construction clause states that the OMA shall be "liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings." *Id.* So the OMA clearly requires this court to

construe its language liberally when determining what must be discussed in open meetings and narrowly when determining what may be discussed in executive session. But it says nothing about who bears the burden of proving a violation of the OMA. Nor does the liberal-construction clause change the clear language of the statute that allows a court to issue an injunction only "[u]pon proof of a violation or threatened violation [of the OMA]," R.C. 121.22(I)(1).

### *2. Exceptions and affirmative defenses*

**{¶ 13}** This court has stated that regarding statutory exceptions, "[u]nder Ohio law, a person asserting an exception is required to prove the facts warranting such an exception." *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 83, 526 N.E.2d 786 (1988); *see also Schaffer v. Weast*, 546 U.S. 49, 57-58, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). Ohio's OMA requires all of a public body's official action and deliberations on official business to occur in open meetings "unless the subject matter is specifically excepted by law." R.C. 121.22(A). R.C. 121.22(G) states: "[T]he members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of" any of the listed statutory purposes. Therefore, Hicks argues, executive sessions are exceptions to the general rule that meetings are to be open, requiring a court to shift the burden of production regarding a violation of the OMA to the public body to prove that it entered executive session for a proper purpose.

**{¶ 14}** However, the United States Supreme Court has said that it would very rarely place the entire burden of persuasion on the defendant at the outset of a proceeding. *See Schaffer* at 57. While under the burden-shifting framework set forth in *Hardin*, 2012-Ohio-2569, 972 N.E.2d 115, the plaintiff technically would first bear a burden of showing that a public body entered executive session, this is next to no burden at all and would allow for a lawsuit any time a public body enters

executive session, even when there is no evidence of a violation of the OMA. Furthermore, entering executive session is not really an exception under the OMA, because there is no violation of the OMA when the public body enters executive session after first complying with the statutory requirement to properly pass a motion. Put another way, to the extent that entering executive session is an "exception" to the rule, the board proved that the exception applied through evidence of its proper motion to enter executive session under the requirements of R.C. 121.22(G)(1). The board's claim that it discussed only permitted topics during executive session is not an affirmative defense that the board bears the burden to prove because there is no evidence that the board committed any violation.

### 3. The Public Records Act, R.C. 149.43

{¶ 15} Hicks argues that the burden of production should shift to the government under the OMA just as this court said it does under Ohio's Public Records Act, R.C. 149.43, in *Natl. Broadcasting Co., Inc*. In that case, this court held that once a plaintiff shows that the government withheld a public record, the burden then shifts to the government to prove that the record is exempt from disclosure. *Id.* at 82-83.

{¶ 16} However, claims alleging violations of the OMA are distinguishable from claims alleging violations of the Public Records Act. In a lawsuit involving the government's failure to produce a public record, the government has the requested record and can prove through in camera review or other evidence contained within the record whether it falls under a disclosure exception. A challenge under the OMA is different because the public body might have no record or other evidence of what was discussed in the executive session outside the motion to enter executive session and the meeting minutes.

{¶ 17} The burden-shifting rule established by the Twelfth District would require public bodies to go beyond the requirements of R.C. 121.22 and actually create a detailed record of its executive-session discussions. But the OMA requires

only that a public body keep executive-session minutes that "reflect the *general subject matter* of discussions in executive sessions authorized under division (G) or (J) of [R.C. 121.22]." (Emphasis added.) R.C. 121.22(C). In other words, the only thing that the public body is required to record in its executive-session minutes is the statutorily permitted reason for the executive session.[1] The Twelfth District created a requirement outside the statute that would require public bodies to keep detailed notes of their executive sessions to prove that no violation occurred.

### 4. Evidentiary considerations

{¶ 18} Hicks argues that the burden of production must be placed on the public body because the public body is the only party who might have evidence of what occurred in any executive session. This argument is flawed for two reasons. First, the plaintiff will have access to the same evidence as the public body through discovery. And if a public body follows the requirements of R.C. 121.22, it may not have any evidence of what occurred in executive session beyond what is recorded in the meeting minutes. Second, the difficulty involved in proving a violation of the OMA is a policy choice for the General Assembly. If the General Assembly had been concerned about access to evidence in these types of cases, it could have written R.C. 121.22 to place the burden of production on the public body. But it chose not to.

{¶ 19} In accordance with the common law and the language of R.C. 121.22, Hicks bears the burden of proving the violation he alleged.

---

1. The dissenting opinion argues that the board's minutes violated the OMA by not listing the topics that were actually discussed during the executive sessions. However, the only claims before this court relate to the board's motions to enter executive session: Hicks claims that the motions improperly recited a laundry list of reasons for entering executive session and that the board's discussions during the executive sessions went beyond the scope of its motions. Hicks's lawsuit did not allege that the executive-session minutes violated the OMA, and the lower courts never ruled on such a claim. Because that claim is not before this court, we make no conclusion regarding whether the minutes complied with the OMA.

### B. Second proposition of law: Presumption of regularity

{¶ 20} The board's second proposition of law is closely related to its first and states that "[w]hen a public body goes into executive session for a permitted reason under R.C. 121.22(G)(1), it is presumed to have acted lawfully during that executive session."

{¶ 21} Under the "presumption of regularity," in the absence of evidence to the contrary, courts will presume that public officers have properly performed their duties and acted lawfully. *Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 28; *State ex rel. Shafer v. Ohio Turnpike Comm.*, 159 Ohio St. 581, 590, 113 N.E.2d 14 (1953); *Wheeling Steel Corp. v. Evatt*, 143 Ohio St. 71, 84, 54 N.E.2d 132 (1944). The presumption of regularity is related to the burden of proof, because if the former attaches, then the burden of production remains on the plaintiff to overcome the presumption and prove that a violation occurred.

{¶ 22} The presumption of regularity attaches to public officers, administrative officers, and public boards acting within their official capacities or performing their official duties. *Levin* at ¶ 28; *L.J. Smith, Inc. v. Harrison Cty. Bd. of Revision*, 140 Ohio St.3d 114, 2014-Ohio-2872, 16 N.E.3d 573, ¶ 27-28. Here, the board was acting within its official capacity to discuss employee matters in executive session. Therefore, the presumption of regularity attaches, and the burden of production remains on Hicks to prove that a violation occurred. Under the presumption of regularity, absent evidence to the contrary, courts should presume that a public body in executive session discussed the topics stated in its motion to enter executive session and did not discuss any matters not stated in the motion. *See Levin* at ¶ 28. It is the plaintiff's burden to prove otherwise.

{¶ 23} If we were to hold that the burden of production is on the public body in these circumstances, we would create a presumption of *irregularity*. Consider a case such as this one, in which there is no evidence of what the public body

discussed in executive session. If the burden of production were on the public body, then in the absence of any evidence, the court would have to presume that the public body acted contrary to law and considered topics not stated in its motion to enter executive session. That would amount to a presumption of irregularity, which is contrary to Ohio law.

{¶ 24} Accordingly, the board's first and second propositions of law actually present the same issue. Due to the presumption of regularity in a public body's meetings, even if the burden of production were to shift to the public body, that burden would be met by the public body's presenting evidence that it moved to enter executive session for reasons permitted under R.C. 121.22. And under the presumption of regularity, absent any evidence to the contrary, a court must presume that the public body discussed the topics included in its motion to enter executive session and did not discuss any matters outside those included in the motion. Ultimately, the outcome is the same either way. The plaintiff bears the burden of proving the violations he alleges.

### C. Application of law

{¶ 25} Hicks argues that regardless of who bears the burden of production, he produced unrefuted evidence that the board's discussions during executive sessions violated the OMA on at least two occasions. We address the evidence presented by Hicks as to each of the executive sessions separately.

### 1. June 7, 2017 executive session

{¶ 26} Through discovery, Hicks received notes taken by one of the board commissioners during or soon after the June 7, 2017 executive session. Those notes included a list of hotel names. Hicks submits that around that time, the board was considering assessing a bed tax on local hotels. He argues that the list of hotels is evidence that the board improperly discussed the bed tax during executive session. During his deposition, the commissioner who took the notes testified that he did not recall what was discussed during the executive session or why he had a list of

hotels in his notes. He also testified that the list of hotels could have been notes that he wrote down after the executive session.

{¶ 27} Hicks's evidence regarding the June 7, 2017 executive session could rebut the presumption of regularity, if the trial court were to believe that the evidence shows that the board discussed improper topics during the executive session. However, the trial court granted Hicks's motion for summary judgment under the mistaken belief that the burden of production was on the board to prove that it had acted lawfully. Therefore, we reverse the Twelfth District's judgment affirming summary judgment on Hicks's claim regarding the June 17, 2017 executive session, and we remand the matter to the trial court for it to determine whether Hicks has met his burden of proving, on viewing the evidence in the light most favorable to the board, that there is no genuine issue of material fact regarding the claim. *See* Civ.R. 56(C).

### 2. *March 1, 2017 executive session*

{¶ 28} Hicks also presented evidence showing that during the March 1, 2017 executive session, the board discussed a county employee, D.R. None of the commissioners could remember what was discussed regarding D.R. Furthermore, none of the commissioners could recall discussing any other employee during that executive session.

{¶ 29} Hicks argues that under R.C. 121.22(G), the board must discuss every topic included in its motion to enter executive session. He argues that the board would not have discussed the appointment, employment, dismissal, discipline, promotion, demotion, and compensation regarding a single employee— here, D.R. He argues that, at most, the board would have discussed only positive or negative consequences regarding a single employee—for example, an employee's promotion and compensation, or an employee's dismissal, discipline, or demotion. Hicks argues that the board thus violated the OMA during the March 1, 2017 executive session by not discussing all the topics included in its motion.

**{¶ 30}** Hicks's argument fails for multiple reasons. First, Hicks has presented no evidence showing that the board discussed only D.R. during the executive session. The commissioners testified in their depositions that they could not recall discussing any other employee during the executive session. But the commissioners could not recall any employees that were discussed during *any* of the executive sessions. The commissioners' testimony is far from proof that the board discussed only one employee during the March 1, 2017 executive session.

**{¶ 31}** Furthermore, even if there were evidence that the board discussed only one employee during the March 1, 2017 executive session, there is no rule that the board must discuss every topic that it includes in its motion to enter executive session. Hicks argues that this court instituted such a rule in *State ex rel. Long v. Cardington Village Council*, 92 Ohio St.3d 54, 748 N.E.2d 58 (2001). But the court never closely analyzed the statutory language in that case.

**{¶ 32}** In *Long*, this court held that the written minutes for public meetings of the Council of the Village of Cardington had violated the OMA because they were not sufficiently specific and contained inaccuracies. *Id.* at 57-60. This court first held that recorded audiotapes of the meetings were not official meeting minutes for purposes of the OMA, because they were not approved by the council, were often inaudible, and were quickly erased after the written minutes had been approved. *Id.* at 57. We then held that the written minutes did not contain sufficient explanation for entering executive session, because the minutes merely stated general reasons such as "personnel and finances," "personnel," and "personnel matters." *Id.* at 59. We held that a motion to enter executive session and the minutes must contain the *statutory* reason for entering executive session. *Id.* ("Furthermore, the minutes reflect that respondents often failed to specify the appropriate statutory purpose or purposes before conducting private, i.e., executive sessions. * * * By using general terms like 'personnel' and 'personnel and finances'

instead of one or more of the specified statutory purposes, respondents violated R.C. 121.22(G)(1)").

{¶ 33} Then, even though this court had held that the audiotapes were not official minutes under the OMA, this court stated that even if it were to accept the council's invitation to consider the tapes to "fill in the blanks" of the written minutes, only one tape evinced a statutory reason for entering executive session and that tape "merely reiterated the laundry list of possible matters from R.C. 121.22(G)(1) without specifying which of those purposes would be discussed in executive session," *Long* at 59. In *Long*, this court never analyzed the language of R.C. 121.22(G), and we did not set forth a rule that public bodies may not include in their motions to enter executive session all the topics they reasonably might discuss. Rather, the language in *Long* that Hicks claims created such a rule is not as broad as he suggests.

{¶ 34} Finally, R.C. 121.22 contains no such rule, and we decline to impose such a rule. The statute never says that a public body must discuss every single topic that it includes in its motion to enter executive session. It simply states that "the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of [the matters listed in R.C. 121.22(G)]." R.C. 121.22(G). In other words, the board may not discuss any *additional* topics *that are not* included in its motion to enter executive session. R.C. 121.22(G)(1) then says: "If a public body holds an executive session pursuant to division (G)(1) of this section, the motion and vote to hold that executive session shall state which one or more of the approved purposes listed in division (G)(1) of this section are the purposes for which the executive session is to be held." So according to the statute, before executive session begins, the public body must state the intended statutory purpose or purposes of the executive session.

{¶ 35} But R.C. 121.22 never says that a public body must discuss every topic that it includes in its motion to enter executive session. The public body might not know before it enters executive session exactly what will be discussed during the session. For example, it may know that it will discuss whether to discipline an employee, but it might not know how the employee should be disciplined or whether the employee should be demoted, dismissed, or have his pay cut. So what is the public body to do? It could simply move to consider disciplining the employee. But if a member of the public body wanted to discuss dismissing the employee instead, or cutting the employee's pay, the public body could not do so because those topics were not included in the motion to enter executive session. And under the rule advocated by Hicks, the public body also could not safely include the topics of dismissal, demotion, or compensation in its motion because if none of the members suggested dismissal or demotion during the session, then the board would be subject to a lawsuit.

{¶ 36} A public body must be able to introduce a motion that includes all the topics it might reasonably discuss during an executive session. There is no rule to the contrary in R.C. 121.22, and there is no reason for this court to impose a rule that is not contained in the statute.

{¶ 37} Because Hicks presented no evidence showing that the board did not discuss all the topics included in its motion to enter executive session, and because there is no rule that the board must discuss every topic included in its motion, we reverse the Twelfth District's judgment affirming summary judgment on Hicks's claim regarding the March 1, 2017 executive session, and we remand the matter to the trial court for further proceedings consistent with this opinion.

### 3. Other executive sessions

{¶ 38} Hicks presented no evidence showing that the board discussed improper topics during any of the other executive sessions. Therefore, we reverse the Twelfth District's judgment affirming summary judgment on Hicks's claims

regarding all the other executive sessions, and we remand the matter to the trial court for further proceedings consistent with this opinion.

### D. Third proposition of law: Attorney fees

{¶ 39} The board argues in its third proposition of law that Hicks is not entitled to an award of attorney fees for "technical" violations of the OMA under R.C. 121.22(I)(2)(a), because, according to the board, it reasonably believed that it was not violating the OMA and that its conduct served public policy. Because we reverse the Twelfth District's judgment affirming the trial court's summary-judgment awards to Hicks under the first two propositions of law, we also reverse its judgment affirming the trial court's award of attorney fees to Hicks that was based on those summary-judgment awards, and we do not reach the merits of the issue presented in the board's third proposition of law.

### III. Conclusion

{¶ 40} Plaintiffs alleging violations of Ohio's OMA, R.C. 121.22, bear the burden of proving the violations they have alleged. To hold otherwise would create a presumption of irregularity that is contrary to Ohio law and the language of the OMA. Therefore, we reverse the Twelfth District's judgment affirming the trial court's award of summary judgment and attorney fees to Hicks. Further, we remand the case to the trial court for it to determine whether Hicks has met his burden of proving that he is entitled to summary judgment on his claim regarding the June 17, 2017 executive session and to conduct further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and DEWINE, DONNELLY, and STEWART, JJ., concur.

BRUNNER, J., dissents, with an opinion joined by SUTTON, J.

BETTY S. SUTTON, J., of the Ninth District Court of Appeals, sitting for KENNEDY, J.

_____

**BRUNNER, J., dissenting.**

{¶ 41} Ohio's Open Meetings Act, R.C. 121.22, provides that a public body may hold an executive session only for specific purposes and only after conducting a public roll-call vote. R.C. 121.22(G). It also requires a public body to publish minutes of each meeting. R.C. 121.22(C). "The minutes need only reflect the general subject matter of discussions in executive sessions authorized under [R.C. 121.22(G)]." *Id.*

{¶ 42} The official minutes for each of the meetings at issue in this case reflect the roll-call vote that was taken to enter executive session, as required by R.C. 121.22(G), but they do not separately reflect the "general subject matter" of the discussions that took place in each executive session, as required by R.C. 121.22(C). The majority opinion nonetheless equates the former requirement with the latter. According to the majority, in order to meet the "general subject matter" documentation requirement of R.C. 121.22(C), "the only thing that the public body is required to record in its executive-session minutes is the statutorily permitted *reason* for the executive session." (Emphasis added.) Majority opinion, ¶ 17.

{¶ 43} The majority's reasoning ignores the text of R.C. 121.22. The roll-call vote under R.C. 121.22(G) must take place during a *public* portion of the meeting *before* the executive session, and the vote is reflected as such in the minutes. On the other hand, the description of the "general subject matter of discussions in executive session[]" required by R.C. 121.22(C) is a record of what was *actually* discussed *during* the executive session, and that should be recorded separately in the minutes. *See White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416, 423, 667 N.E.2d 1223 (1996), quoting R.C. 121.22(C) (interpreting R.C. 121.22(C) as requiring a public body to keep minutes of what was discussed in an executive session, "which may be properly limited to 'the general subject matter of discussions,' " and holding that the minutes of other portions of public meetings

16

must be more detailed). The topics identified in the "general subject matter" description may or may not be identical to the purposes identified at the time of the roll-call vote. But when the public body votes to enter executive session based on a laundry list of *potential* topics of discussion, as appellant, Clermont County Board of Commissioners, did here, the purpose served by the "general subject matter" requirement of R.C. 121.22(C) is clear: the public must have access to information about the discussions that would otherwise be obscured. That is, the public must be provided an understanding, at least at a general level, of what the public body *actually* discussed in executive session as opposed to what it thought it *might* discuss. The General Assembly has placed this requirement on public bodies. The majority now effectively removes it from the statute, undermining the purpose of the Open Meetings Act, which is to provide the public with a right of access to information considered in public meetings by public bodies conducting official business.

**{¶ 44}** The majority attempts to avoid this conclusion by stating in a footnote that it expresses no opinion on "whether the minutes complied with" the general-subject-matter-documentation requirement, because appellee, Christopher Hicks, did not specifically allege such a violation in his complaint and the appellate court did not rule on it. Majority opinion at ¶ 17, fn. 1. This ignores Hicks's claim that the board acted unlawfully during executive sessions. Moreover, the appellate court expressly stated that the "general subject matter" provision of R.C. 121.22(C) was an "option" that the board failed to "exercise" to substantiate the topics it discussed in the executive sessions at issue. 2021-Ohio 998, 171 N.E.3d 358, ¶ 42. Importantly, the "general subject matter" documentation requirement is not a mere "option"; it is a requirement that was created by the General Assembly. The violation of the requirement is plain from the face of the meeting minutes. It is essential that this court interpret and apply the law to the evidence that appears in the record.

{¶ 45} The majority opinion's footnote also does not address the real problem, which is that the reasoning for the majority's decision in this case falls apart once the "general subject matter" documentation requirement is given its intended effect. In discussing the board's first proposition of law, the majority concludes that a public body cannot be expected to point to a record of what took place during an executive session, because R.C. 121.22 does not require a public body to "create a detailed record of its executive-session discussions," majority opinion at ¶ 17, which means that the public body "might have no record or other evidence of what was discussed in the executive session outside the motion to enter executive session and the meeting minutes," *id.* at ¶ 16. That is directly contrary to R.C. 121.22(C). R.C. 121.22(C) requires a public body to record a "general subject matter" statement to which the public body can point. The majority's reasoning in determining the board's first proposition of law is therefore not a correct statement of the law, and its attempt to explain its reasoning does not change that.

{¶ 46} Regarding the board's second proposition of law, the majority addresses how the presumption of regularity concerning a public body's performance of its duties applies to Hicks's claim that the board failed to act lawfully during executive sessions. In doing so, the majority impermissibly connects a presumption that a public body acted lawfully *during* executive session to a matter that occurs *before* the public body enters executive session—namely, the public body's statement of topics included in its motion to enter executive session. That is obviously not a fair application of the presumption. The presumption that a public body acted lawfully *during* an executive session must in part be based on the public body's statement of the "general subject matter" discussed during the executive session. When a public body has failed to sufficiently include this required statement in its meeting minutes, employing any presumption that the public body acted lawfully during executive session

diminishes the transparency envisioned by Ohio's Open Meetings Act. Disappointingly, that is exactly what the majority permits here.

{¶ 47} In this case, the board failed to comply with the "general subject matter" documentation requirement of R.C. 121.22(C). I would therefore affirm the judgment of the Twelfth District Court of Appeals. Because the majority does not take this approach, I respectfully dissent.

SUTTON, J., concurs in the foregoing opinion.

———————————

Barron, Peck, Bennie & Schlemmer Co., L.P.A., and Matt Miller-Novak; and Kinsley Law Office and Jennifer M. Kinsley, for appellee.

Isaac, Wiles & Burkholder, L.L.C., Mark Landes, Aaron M. Glasgow, and Dale D. Cook, for appellant.

Faruki, P.L.L., Erin E. Rhinehart, and Christopher C. Hollon, urging affirmance for amicus curiae Ohio Coalition for Open Government.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Zachery P. Keller, Deputy Solicitor General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

Frost Brown Todd, L.L.C., Philip K. Hartmann, Yazan S. Ashrawi, and Charles B. Galvin; and Garry E. Hunter, General Counsel, Ohio Municipal League, urging reversal for amici curiae Ohio Municipal league, Ohio Township Association, Coalition of Large Ohio Urban Townships, County Commissioners Association of Ohio, Ohio School Boards Association, Ohio Association of School Business Officials, and Buckeye Association of School Administrators.

———————————