[Cite as *Boutros v. MetroHealth Sys. Bd. of Trustees*, 2025-Ohio-3142.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

AKRAM BOUTROS, M.D.,       :

      Plaintiff-Appellant,     :

                                No. 114446

      v.                   :

THE METROHEALTH SYSTEM    :
BOARD OF TRUSTEES, ET AL.,

                             :

      Defendants-Appellees.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 4, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-971808

---

### *Appearances:*

Matty, Henrikson & Greve LLC, Mark B. Marong and Shana A. Samson; Cohen Rosenthal & Kramer LLP, Jason R. Bristol, Joshua R. Cohen, and James B. Rosenthal, *for appellant*.

McCarthy, Lebit, Crystal & Liffman Co., L.P.A., Mark I. Wallach; Roetzel & Andress, LPA, William R. Hanna, and Lisa A. Mack, *for appellees*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Plaintiff-appellant Akram Boutros, M.D. ("Boutros") appeals the trial

court's grant of summary judgment in favor of defendants-appellees MetroHealth System's Board of Trustees, et al. ("Board"). For the reasons that follow, we affirm.

{¶ 2} The facts of this case are generally undisputed. Boutros was the President and CEO of MetroHealth Hospitals from 2013 until November 21, 2022. In October 2022, the Board initiated a formal investigation of concerns relating to unauthorized compensation Boutros allegedly received. The investigation was conducted by attorney John McCaffrey ("McCaffrey") from Tucker Ellis LLP ("Tucker Ellis"). The Board ultimately terminated Boutros for allegedly paying himself nearly $2 million in unauthorized bonuses without the Board's knowledge and consent.

{¶ 3} In the weeks following his termination, Boutros filed multiple lawsuits against the Board and others in an effort to challenge its actions. On November 28, 2022, Boutros filed the complaint in the underlying case, alleging violations of Ohio's Open Meetings Act ("OMA").[1] He filed an amended complaint on December 15, 2022. In his amended complaint, Boutros alleged that the Board secretly retained McCaffrey and Tucker Ellis to investigate him, allowed that investigation and the report produced from the investigation to proceed without proper authorization, and ultimately terminated him without public notice and deliberation.

---

[1] The OMA is often used interchangeably with the Sunshine Law and Sunshine Act. Ohio's Sunshine Law incorporates the OMA and Ohio's Public Records Act (R.C. 149.43).

{¶ 4} The parties filed cross-motions for summary judgment. On October 7, 2024, the trial court granted the Board's motion for summary judgment and denied Boutros's motion for summary judgment.

**Assignments of Error; Noncompliance with Appellate Rules**

{¶ 5} Boutros filed a timely notice of appeal, raising two assignments of error for review:

> I. The trial court erred in granting summary judgment in favor of Appellees.

> II. The trial court erred in denying summary judgment in favor of Appellant.

{¶ 6} As an initial matter, Boutros fails to comply with the appellate rules in his brief. App.R. 16(A)(4) provides that

> the appellant shall include in its brief . . . [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.

{¶ 7} App.R. 12(A)(2) provides that this court "may disregard an assignment of error presented for review if the party raising it fails to . . . argue the assignment separately in the brief, as required under App.R. 16(A)." Boutros improperly combined his two assignments of error into one argument. Although we could summarily affirm the trial court's judgment based on inappropriate briefing, we acknowledge that cases are best decided on their merits and will proceed to address Boutros's assignments of error, combining them for review.

**Standard of Review**

{¶ 8} Boutros claims that the trial court erred in granting summary judgment in favor of the Board and in denying his motion for summary judgment. Boutros argues that he presented clear and convincing evidence that the Board violated the OMA by going into executive session to consider topics outside the scope of R.C. 121.22; failing to follow proper procedure for entering executive session; making improper considerations and findings at board meetings; failing to maintain accurate minutes; improperly retaining counsel to investigate him; and improperly establishing a "Special Investigation Committee."

{¶ 9} An appellate court reviews a trial court's decision on a summary judgment motion de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Under a de novo review, this court independently examines the evidence to determine if, as a matter of law, no genuine issues exist for trial. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist. 1997), citing *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116 (1980).

{¶ 10} Pursuant to Civ.R. 56(C), summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). Because the granting of summary judgment ends litigation, courts should carefully award summary judgment only after resolving all doubts in

favor of the nonmoving party and finding that "reasonable minds can reach only an adverse conclusion" against the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶ 11} The burden of demonstrating that no genuine issue as to any material fact exists falls upon the moving party. Once the moving party has met its burden, it is the nonmoving party's obligation to present evidence on any issue for which that party bears the burden of production at trial. *Scheel v. Rock Ohio Caesars Cleveland, L.L.C.*, 2018-Ohio-3568, ¶ 26 (8th Dist.). The moving party is entitled to summary judgment if the nonmoving party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Rock Ohio Caesars* at *id.*, citing *Brandon/Wiant Co. v. Teamor*, 125 Ohio App.3d 442 (8th Dist. 1998).

**Open Meetings Act**

{¶ 12} The OMA, codified in R.C. 121.22, requires public bodies in Ohio to conduct all deliberations on official business in meetings that are open to the public. *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 2022-Ohio-4237, ¶ 1. The OMA states that it "shall be liberally construed" to meet that end. *Hicks* at *id.*, citing R.C. 121.22. "However, no construction of the OMA, even a liberal one, changes the default rule that a plaintiff alleging violations of the OMA bears the burden of proving the violations." *Hicks* at *id.*

{¶ 13} "The presumption of regularity is related to the burden of proof, because if the former attaches, then the burden of production remains on the

plaintiff to overcome the presumption and prove that a violation occurred." *Hicks* at ¶ 22. "'Under the "presumption of regularity," and in the absence of evidence to the contrary, courts will presume that public officers have properly performed their duties and acted lawfully.'" *Hicks* at *id.*, quoting *Toledo v. Levin*, 2008-Ohio-1119, ¶ 28.

**Board Meetings**

{¶ 14} Boutros alleges that the Board violated the OMA by improperly going into executive session during public meetings of the Board. The meetings Boutros contests were held between November 28, 2020, and November 28, 2022, including those leading up to Boutros's termination and the selection of a new CEO.

{¶ 15} Boutros alleges that the Board failed to produce evidence that it complied with the OMA or that the presumption of regularity set forth in *Hicks* applies in this case. But "the burden of proof, or at least the burden of persuasion, [is] on the plaintiff . . . . Therefore, to receive relief, the plaintiff must prove a violation of the OMA. There is no requirement for the public body to conversely prove that no violation occurred." *Hicks* at ¶ 11.

{¶ 16} R.C. 121.22(G) provides that an executive session can only be initiated "for the sole purpose of consideration" of certain matters. Boutros claims that the Board violated R.C. 121.22(G) by entering executive session to discuss topics that did not fall within the statute's purview. Specifically, Boutros alleges that the Board's stated reasons for entering executive session, including "attorney client privilege" and "personnel matters," are not covered by R.C. 121.22(G).

{¶ 17} R.C. 121.22(G)(3) provides that a public body may go into executive session for "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action." The Board concedes that its meetings with McCaffrey did not fall under R.C. 121.22(G)(3). Although a general "attorney-client privilege" is not one of the enumerated bases for executive session, consultation by the Board with its legal counsel, even if it occurs during a nonpublic session held during a public meeting, does not per se violate the OMA. In *Steingass Mechanical Contracting, Inc. v. Warrensville Hts. Bd. of Edn.*, 2003-Ohio-28 (8th Dist.), this court found that board members' discussions with their attorney in executive session were not subject to the Ohio's Sunshine Law. In *Steingass*, the plaintiff argued that the board violated R.C. 121.22(G) because it went into executive session to obtain legal advice not related to any pending litigation. *Id.* at ¶ 47-49. "In order to show a violation of the 'open meeting' rule . . . either a resolution, rule[,] or formal action of some kind must have been adopted by the public body at a meeting not open to the public." *Id.* at ¶ 47. This court concluded that R.C. 121.22(G) had not been violated because the discussions with the board attorney did not result in the adoption of any rule, resolution, or the taking of formal action. *Id.* at ¶ 51.

{¶ 18} "The statute is intended to apply to those situations where there has been actual formal action taken; to wit, formal deliberations concerning the public business." *Id.* at ¶ 49. "Information-gathering and fact-finding are essential

functions of any board, and that the gathering of facts and information for ministerial purposes does not constitute a violation of the Sunshine Law." *Id.*

{¶ 19} Here, Boutros has not shown evidence that the Board promulgated any rule, resolution, or formal action while in executive session or otherwise took formal action related to Boutros when meeting with McCaffrey.

{¶ 20} Boutros also argues that the Board improperly entered into executive session to discuss "personnel matters."[2] R.C. 121.22(G)(1) allows certain personnel matters to be discussed in executive session, including "the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual."

{¶ 21} When the Board terminated Boutros in November 2022, the Board went into executive session and identified the subject of that session as the "appointment, employment, discipline and compensation of a public employee." The Board then voted on his termination in public session. When the Board hired Boutros's successor in September 2022, it did not go into executive session at all. Thus, Boutros has not shown evidence of any formal Board action that resulted from an alleged discussion of "personnel matters." In his complaint, Boutros references

---

[2] Boutros also alleges the same as to "real-estate matters"; however, he has not shown that the matters that were covered are outside the purview of R.C. 121.22(G)(2), which covers real property transactions. Moreover, this claim was not raised in the trial court; therefore, it is waived. *See Shaker Hts. ex rel. Friends of Horseshoe Lake v. Shaker Hts.*, 2024-Ohio-3007 (8th Dist.) (declining to review any claims, issues, or arguments not presented at the trial-court level).

his termination and the Board's hiring of a new CEO but has not shown that either action resulted from discussion of matters not specifically authorized by statute.

{¶ 22} Our review of the record shows that the Board cited one or more statutorily permitted reasons to go into executive session at each meeting Boutros challenged. Boutros has failed to present evidence to meet his burden of showing that the Board discussed any improper subjects in executive session.

{¶ 23} Next, Boutros claims that the Board failed to keep complete minutes of the meetings or follow the proper procedure to enter executive session.

{¶ 24} Boutros's claims surrounding the minutes of the Board were not raised in his complaint. He did not allege that the Board failed "to prepare, file, and maintain full and accurate minutes" until his motion for summary judgment. The Board cites *McGinnis, Inc. v. Lawrence Economic Dev. Corp.*, 2003-Ohio-6552 (4th Dist.), to support its argument that a party cannot seek summary judgment on claims not raised in the pleadings. In *McGinnis*, the appellant filed a motion for summary judgment seeking injunctive relief under R.C. 121.22. However, the appellant did not raise a violation of R.C. 121.22 in its complaint nor did the appellant attempt to amend its complaint to add the pertinent claims. The appellate court found that the appellant's attempt to assert an alleged violation of R.C. 121.22 by summary-judgment motion, when the appellant did not raise the alleged violation in its complaint, was impermissible. *Id*. at ¶ 22.

{¶ 25} "Civ.R. 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief." *Illinois Controls v.*

*Langham*, 70 Ohio St.3d 512, 525 – 526 (1994). Although Boutros did not specifically claim a violation of requirements surrounding minutes for meetings, he did allege violations of R.C. 121.22(C). We find, however, that Boutros is unable to show that the Board violated R.C. 121.22 by failing to keep complete minutes.

{¶ 26} R.C. 121.22(C) provides that

> [t]he minutes of a regular or special meeting of any public body shall be promptly prepared, filed, and maintained and shall be open to public inspection. The minutes need only reflect the general subject matter of discussions in executive sessions authorized under division (G) or (J) of this section.

{¶ 27} In *White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416 (1996), the Ohio Supreme Court determined that minutes of an executive session may be limited to general subject matter and do not need to be kept with specificity as to what happened in executive session. The Court explained:

> When one considers the sensitive nature of the topics examined in executive sessions, it follows from this language that it is only the minutes of an executive session which may be properly limited to "the general subject matter of discussions." The minutes of any other meeting of a public body must contain a more substantial treatment of the items discussed, and certainly should not be limited to a mere recounting of the body's roll call votes.

*Id.* at 423.

{¶ 28} The meeting minutes for the Board for the period from January 27, 2021, through November 21, 2022, recorded each specific reason the Board was entering into executive session and that the Board unanimously voted to do so. This is sufficient to meet R.C. 121.22(C)'s requirement that the "minutes need only reflect the general subject matter of discussions in executive sessions." "In other words,

the only thing that the public body is required to record in its executive-session minutes is the statutorily permitted reason for the executive session." *Hicks*, 2022-Ohio-4237, at ¶ 17.

{¶ 29} Boutros claims that the presumption of regularity does not attach to the case at bar because the Board regularly entered executive session without providing a reason pursuant to R.C. 121.22. Boutros cites *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2024-Ohio-1852 (11th Dist.), to support his claim that the presumption of regularity, as set forth in *Hicks*, 2022-Ohio-4237, does not apply. In *Ames*, the Eleventh District Court of Appeals found that the presumption of regularity did not attach to some of the plaintiff's claims because it was apparent, on its face, that the board entered executive session for reasons not permitted by R.C. 121.22(G).

{¶ 30} *Ames* is distinguishable because, here, Boutros has not provided sufficient evidence that the Board improperly entered executive session for reasons outside the scope of R.C. 121.22(G).

{¶ 31} Considering the foregoing, Boutros is unable to overcome the presumption of regularity that attaches to the Board's conduct of its meetings.

**Hiring of Outside Counsel**

{¶ 32} Boutros alleged that the Board's retention of McCaffrey and Tucker Ellis must be presumed to be invalid because the Board did not notice a meeting or pass a resolution regarding the hiring. Boutros alleges that because McCaffrey and

the firm were not "lawfully engaged to assist in or conduct any investigation into Plaintiff's compensation," any action they took is "of no legal value."

{¶ 33} In *Armatas v. Plain Twp.*, 2023-Ohio-204 (5th Dist.), the Fifth District Court of Appeals affirmed the grant of summary judgment in favor of the defendant township. The township, two of its trustees, and its zoning inspector filed a motion to intervene in an action against the plaintiff, seeking to have the plaintiff declared a vexatious litigator. The plaintiff argued that, because the meeting minutes of the board "show absolutely no reference to the authorization of a vexatious litigator action (or any other type of lawsuit) against [the plaintiff]," the plaintiff had "fulfilled his burden of demonstrating the essential elements of his claim." *Id.* at ¶ 54. The trial court disagreed, finding that the plaintiff's claim was based upon an incorrect assumption that the board's deliberation and a resolution authorizing a vexatious litigator action were required before the motion to intervene was filed, and, because there was no such resolution, the board must have engaged in improper deliberations. *Id.* at ¶ 58. The court determined that the sole cause before the court was whether there was a violation of the OMA; thus, the court would not consider whether the plaintiff was correct in its claim that no deliberation had occurred. *Id.*

{¶ 34} Likewise, here, Boutros's claim is premised on the incorrect assumption that a resolution of the Board was required for the Board to engage outside legal services. Because the Board never passed a resolution to authorize hiring McCaffrey, Boutros claims that the trial court should have concluded that the

Board deliberated on public business outside of a public meeting. The Board, in response, argued that it was authorized to engage outside legal services under its existing authority found in R.C. 339.06, without passing a resolution.[3]

{¶ 35} As in *Armatas*, here the trial court's function was to determine whether the Board violated the OMA when it retained McCaffrey, not whether the Board had the authority to retain him. Boutros has not provided sufficient evidence to create a genuine issue of material fact that the Board violated the OMA when it retained McCaffrey and Tucker Ellis.

**Special Investigation Committee**

{¶ 36} Boutros alleged that the Board impermissibly created a "Special Investigation Committee" to investigate Boutros and, because there was no resolution passed by the Board to create this committee, it must be presumed that the Board violated the OMA. Although the term "Special Investigation Committee" appeared in McCaffrey and Tucker Ellis's engagement agreement, there is no evidence that the Board created this committee or violated the OMA. In deposition testimony, Board members John Silvers and Inajo Chappell testified that the Board did not establish a special investigation committee to investigate Boutros. Boutros has not shown sufficient evidence to the contrary; therefore, he fails to show that the OMA was violated in relation to this claim.

---

[3] R.C. 339.06(J)(4) provides: "The board may hire, by contract or as salaried employees, . . . attorneys . . . and other professional advisors as it determines are necessary and desirable to assist in the management of the programs and operation of the county hospital. Such professional advisors may be paid from county hospital operating funds."

**{¶ 37}** We find no genuine issue of material fact remains and the trial court correctly granted summary judgment in favor of the Board and denied summary judgment as to Boutros's claims.

**{¶ 38}** The assignments of error are overruled.

**{¶ 39}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHAEL JOHN RYAN, JUDGE

LISA B. FORBES, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)
ever formed a special committee to investigate him.