[Cite as *Ames v. Columbus City School Dist. Bd. of Edn.*, 2024-Ohio-3411.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brian M. Ames, | : | |
| Plaintiff-Appellant, | : | No. 24AP-143 |
| | | (C.P.C. No. 23CV-1849) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Columbus City School District Board of Education, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on September 5, 2024

**On brief:** *Barry M. Ward*, for appellant. **Argued:** *Barry M. Ward.*

**On brief:** *Amundsen Davis, LLC*, and *John C. Albert*, for appellee. **Argued:** *John C. Albert.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Plaintiff-appellant, Brian M. Ames, appeals a judgment of the Franklin County Court of Common Pleas that granted summary judgment to defendant-appellee, the Columbus City School District Board of Education ("Board"). For the following reasons, we affirm that judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 1, 2021, the Board adopted a "Resolution of Joinder of Prospective Litigation" at a regular business meeting after a discussion amongst Board members. (Pl.'s Exs. to Mot. for Summ. Jgmt., Ex. 8 at CCSD_000114.) Pursuant to this resolution, the

Board authorized the Columbus City School District ("District") to join the Ohio Coalition for Equity and Adequacy of School Funding ("OCEASF") and pay the annual membership fee of $2.00 per district pupil. OCEASF intended to pursue litigation to eliminate Ohio's EdChoice voucher program.

{¶ 3} Over a year later—on August 10, 2022—the Board's Finance and Appropriations Committee held a public meeting. The agenda for that meeting, which was available prior to the meeting, included "Voucher Project Litigation" under "FY 2023 Budget Request." (Def. Columbus City School Dist. Bd. of Edn.'s Memo Contra Pl.'s Mot. for Summ. Jgmt. & Def. Columbus City School Dist. Bd. of Edn.'s Mot. for Summ. Jgmt., Ex. D.) At the meeting, information was presented regarding a budget request for $91,018.00 to pay OCEASF for the District's 2022-2023 member dues.

{¶ 4} The Board held a regular business meeting on August 16, 2022. Prior to the meeting, the Board posted the agenda for the meeting on the District's website. Item 11.1 of the agenda was listed as "Authority to Renew the District's Membership in the Ohio Coalition for Equity and Adequacy of School Funding and Voucher Litigation Dues." (*Id.* at Ex. B.) Regarding Item 11.1, the agenda stated that "[i]t is recommended the board of education authorize the treasurer/CFO to pay the annual membership fee of $91,018.00, paid out of the FY 23 General Fund." (Pl.'s Exs. to Mot. for Summ. Jgmt., Ex. 2.) The agenda further provided that "the Board of Education approved the Resolution of Joinder of Prospective Litigation on June 1, 2021. This is the annual membership dues to continue the implementation of the resolution." (*Id.*)

{¶ 5} Item 11.1 was included in the Board's consent agenda. According to Board Policy 0165.1(E):

> The Board shall use a consent agenda to keep routine matters within a reasonable time frame.
>
> The following routine business items may be included in a single resolution for consideration by the Board.
>
> 1.      minutes of prior meetings
>
> 2.      bills for payment
>
> 3.      hiring of personnel
>
> 4.      resolutions that require annual adoption, such as bank signatories, Ohio School Athletic membership, etc.
>
> 5.      resignations and leaves
>
> 6.      authorization legislation
>
> A member of the Board may request any item may be removed from the consent resolution by the majority vote of the Board.

(Pl.'s Exs. to Mot. for Summ. Jgmt., Ex. 8 at CCSD_000119.)

**{¶ 6}**   During the August 16, 2022 board meeting, the Board president asked if any member wanted to remove any item from the consent agenda for separate consideration. No member requested the removal of any item from the consent agenda.  The Board president then asked if any member wanted to discuss any item on the consent agenda. One Board member raised questions regarding two different items on the consent agenda, but not Item 11.1.  After discussion of the two items, the Board adopted the consent agenda by a roll call vote.  By adopting the consent agenda, the Board adopted every item on the consent agenda.

**{¶ 7}**   On March 17, 2023, Ames filed a complaint against the Board alleging that the Board violated R.C. 121.22, the Open Meetings Act, by using a consent agenda to approve the payment of the District's annual membership dues to OCEASF.  Ames sought a declaratory judgment that the Board had violated the Open Meetings Act as alleged in the

complaint, an injunction to compel the Board to comply with R.C. 121.22, reasonable attorney fees, and a civil forfeiture of $500.

{¶ 8} Each party moved for summary judgment. The trial court concluded that the Board's use of a consent agenda to authorize the payment of the District's annual membership dues to OCEASF did not violate the Open Meetings Act. Consequently, in a judgment dated January 31, 2024, the trial court granted the Board summary judgment and denied Ames summary judgment.

## II. ASSIGNMENT OF ERROR

{¶ 9} Ames appeals the January 31, 2024 judgment and assigns the following error:

> The trial court erred when it granted Appellee's Motion for Summary Judgment and denied Appellant's Motion for Summary Judgment.

## III. STANDARD OF REVIEW

{¶ 10} A trial court must grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *A.J.R. v. Lute*, 163 Ohio St.3d 172, 2020-Ohio-5168, ¶ 15; *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, ¶ 18. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *A.J.R.* at ¶ 15. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Schumacher v. Patel*, 10th Dist. No. 23AP-254, 2023-Ohio-4623, ¶ 16; *Coppo v. Fixari Family Dental Practice, L.L.C.*, 10th Dist. No. 21AP-593, 2022-Ohio-1828, ¶ 9.

## IV. LEGAL ANALYSIS

{¶ 11} By his sole assignment of error, Ames argues that the Open Meetings Act prohibited the Board from using a consent agenda at its August 16, 2022 meeting. We disagree.

{¶ 12} The purpose of the Open Meetings Act is "to require that public business be conducted in a manner that is accessible to the public." *State ex rel. More Bratenahl v. Bratenahl*, 157 Ohio St.3d 309, 2019-Ohio-3233, ¶ 15. The Open Meetings Act begins with the statement: "This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." R.C. 121.22(A). It directs that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(C). It further provides, "[a] resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body." R.C. 121.22(H).

{¶ 13} Ames begins his appellate brief by pointing this court to *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 165 Ohio St.3d 292, 2021-Ohio-2374. He relies on that case for the proposition that consent agendas are "clearly an attempted end-run around the [Open Meetings] Act." (Appellant's Brief at 10.) Ames misreads *Ames*, a case to which he was a party.

{¶ 14} In *Ames*, the Portage County Solid Waste Management District Board of Commissioners ("SWMD") adopted a consent agenda procedure to approve routine items. A board member's "yes" vote on the consent agenda was a "yes" vote on each of the items included on the consent agenda. At SWMD meetings, the members would not discuss consent agenda items; a roll call vote would be taken to adopt the consent agenda. The public would not learn what resolutions the SWMD had adopted by consent agenda until the publication of the meeting minutes, which would contain the full text of the resolutions.

{¶ 15} Ames filed a petition for a writ of mandamus against the SWMD, alleging in relevant part that the use of consent agendas at the SWMD's September 2019 meetings violated the Open Meetings Act. The Eleventh District Court of Appeals denied the writ on summary judgment, finding no violation of the Open Meetings Act occurred as a matter of law. When appealing that ruling to the Supreme Court of Ohio, Ames argued that the use of consent agendas effectively closed SWMD meetings because members of the public did not know what resolutions the SWMD was adopting. *Id.* at ¶ 16, 19. Although the Supreme Court found this argument persuasive, it did *not* hold that the Open Meetings Act prohibited the use of consent agendas. Instead, the Supreme Court stated:

> While the Open Meetings Act does not appear to prevent the board from using consent agendas as a general matter, Ames has raised a plausible theory—sufficient to survive a motion for summary judgment—that the board's use of a consent agenda in this manner constructively closes its public meetings and is an impermissible end run around the Open Meetings Act. We therefore conclude that the court of appeals erred in finding, as a matter of law, that the use of a consent agenda in the manner described did not violate the Open Meetings Act.

*Id.* at ¶ 19.

{¶ 16} In other words, the problem in *Ames* was not the SWMD's use of consent agendas, but the SWMD's failure to make public at the time of their meetings the specific resolutions they were voting on as part of the consent agenda. By keeping secret the resolutions being voted on, the SWMD arguably "constructively close[d] its public meetings," which could amount to a violation of the Open Meetings Act. *Id.*

{¶ 17} In this case, the Board announced to the public the items on its consent agenda prior to the August 16, 2022 meeting by posting the entire agenda on the District's website. Consequently, the public knew about the resolutions the Board would be voting on as part of the consent agenda, and members of the public could sign up to comment

during the meeting about those resolutions. Thus, the Board, unlike the SWMD, did not effectively close its public meeting by keeping secret the resolutions on the consent agenda. *Ames*, therefore, is only relevant to this case to extent that it held that "the Open Meetings Act does not appear to prevent the board from using consent agendas as a general matter." *Id.*

{¶ 18} In arguing the Open Meetings Act does prevent the use of consent agendas, Ames first asserts that the Board's use of a consent agenda is antithetical to the Open Meeting Act's definition of "meeting." Pursuant to R.C. 121.22(B)(2), a "meeting" is "any prearranged discussion of the public business of the public body by a majority of its members." Ames asserts that a consent agenda forecloses discussion, which is required for a meeting to occur.

{¶ 19} We do not agree with Ames that the consent agenda procedure employed by the Board foreclosed discussion of the items on the consent agenda. The consent agenda procedure the Board adopted permitted, but did not require, Board members to discuss the items on a consent agenda. At the August 16, 2022 meeting, the Board president gave Board members the opportunity to discuss any consent agenda item before the roll call vote to adopt the consent agenda. Additionally, any Board member could request to remove any item from the consent agenda so the Board could consider—and debate—it separately.

{¶ 20} Moreover, the presence of an item on the consent agenda did not prevent the public from discussing it with the Board. The Board published information regarding the items on its consent agenda prior to its August 16, 2022 meeting so members of the public could sign up to comment regarding those items at the meeting.

{¶ 21} Ames' real concern is that the Board members chose not to discuss every item on the consent agenda, so they did not discuss payment of OCEASF's annual membership

dues. But nothing in the Open Meetings Act requires a public body to discuss every issue on which the public body votes. The Open Meetings Act, instead, mandates that the public have meaningful access to the discussions that take place. *More Bratenahl*, 2019-Ohio-3233, at ¶ 16, 19.

{¶ 22} Here, the Board conducted its public business—adoption of the resolution to renew its membership in OCEASF and pay the annual dues—in the open. The Finance and Appropriations Committee held an open meeting on August 10, 2022. The agenda provided to the public prior to the meeting included an item entitled "Voucher Project Litigation" under the heading "FY 2023 Budget Request." (Def. Columbus City School Dist. Bd. of Edn.'s Memo Contra Pl.'s Mot. for Summ. Jgmt. & Def. Columbus City School Dist. Bd. of Edn.'s Mot. for Summ. Jgmt., Ex. D.) During the meeting, the committee members discussed payment of the annual dues to OCEASF.

{¶ 23} Approximately one week after the committee meeting, the Board held a regular business meeting that was open to the public. Before the August 16, 2022 meeting, the Board posted an agenda to the District's website that included as part of the consent agenda Item 11.1, "Authority to Renew the District's Membership in the Ohio Coalition for Equity and Adequacy of School Funding and Voucher Litigation Dues." (*Id.* at Ex. B.) The agenda further explained that the Board was voting to authorize the expenditure of $91,018.00 to renew the District's membership in OCEASF. The Board voted to adopt the consent agenda—which included Item 11.1—at the open meeting. Given these undisputed facts, we conclude the trial court did not err in determining no violation of the Open Meetings Act occurred.

{¶ 24} As a final matter, we note that Ames argues that the trial court erred in implying that the Board's adoption of *Robert's Rules of Order Newly Revised* rendered a

portion of R.C. 121.22(C) ineffective.  The trial court did not suggest a conflict between *Robert's Rules of Order Newly Revised* and R.C. 121.22(C), much less imply that *Robert's Rules of Order Newly Revised* nullified R.C. 121.22(C).  We, therefore, conclude that the trial court did not err as alleged by Ames.

{¶ 25} In sum, we find that the trial court properly granted summary judgment to the Board and denied summary judgment to Ames.  Accordingly, we overrule Ames' sole assignment of error.

## V.  CONCLUSION

{¶ 26} For the foregoing reasons, we overrule the sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and BEATTY BLUNT, J., concur.

_____