[Cite as *State ex rel. Ames v. Vermilion Local School Dist. Bd. of Edn.*, 2026-Ohio-893.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| State of Ohio ex rel. Brian M. Ames | Court of Appeals No. E-25-018 |
| Appellant | |
| | Trial Court No. 2024 CV 0250 |
| v. | |
| Vermilion Local School District Board of Education | **DECISION AND JUDGMENT** |
| | Decided: March 17, 2026 |
| Appellee | |

* * * * *

Christian M. Williams, Esq., and
Daniel L. Lautar, Esq., for the appellee.

Brian M. Ames, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Relator-appellant, Brian Ames, appeals the May 14, 2025 Judgment Entry of the Erie County Court of Common Pleas, granting summary judgment in favor of respondent-appellee, Vermilion Local School District Board of Education ("the Board"), and denying his own motion for summary judgment. Ames additionally appeals the April 29, 2025 Judgment Entry denying his motion for leave to file a surreply.

**{¶ 2}** The central issue before us is whether the Board constructively closed its March 13, 2023 Board meeting in violation of the Open Meetings Act, R.C. 121.22, by use of a consent agenda. For the following reasons, we affirm the trial court's judgment.

## I. Background

**{¶ 3}** The parties stipulated to many of the core facts before the trial court. From the record, we know that the Board is the school board of Vermilion Local School District ("the District") located primarily within Erie County, Ohio. The Board is responsible for the operation, management, and administration of the public schools within the District. It is comprised of five elected members of the community, and is established pursuant to R.C. 3313.01. Pursuant with Board Policy 0164, the Board meets on the second Monday of each month at 6:00 p.m.

## A. The March 13, 2023 Meeting

**{¶ 4}** On March 13, 2023, at 6:00 p.m., the Board held a regular meeting. Prior to this meeting, the Board posted the meeting's agenda on the District's website for the public to review. Included in the agenda was "Section X. Consent Agenda" consisting of 14 items for approval:

### X. CONSENT AGENDA

> The Superintendent and Treasurer recommend that the Board of Education approve the Consent Agenda items. Action by the Board of Education in "Adoption of the Consent Agenda" means that all items are adopted by one single motion unless a member of the Board, the Treasurer or the Superintendent requests that any such item be removed from the Consent Agenda and voted upon separately.

2.

1. Minutes of the February 13, 2023 Regular Meeting and February 16, 2023 Special Meeting (ATTACHMENT E)

2. Approve the revisions to District Policy 5460 - Graduation Requirements, and the new Student Board Members policy for the second read. (ATTACHMENT F)

3. Approve the revisions to District Policies 5112, 5112.05 for the first read. (ATTACHMENT G)

4. Approve the renewal contract from June 12, 2023-June 11, 2024 with Jamf Pro, device management Software at a cost of $33,687.24. (ATTACHMENT H)

5. Approve the Bluum of Minnesota agreement for the purchase of new classroom interactive panels and installation for Vermilion High School at a cost of $183,883.45. (ATTACHMENT I)

6. Approve the **Employment Action**:
   **Resignation:**
   Trenton Shaw, VHS Custodian, effective March 1, 2023
   Rachel Beckwith, VES Teacher, effective June 2, 2023
   Heidi Watson, SMS Food Service Assistant effective February 13, 2023

   **Retirement:**
   Tina Phillips, VHS Head Night Custodian, effective July 1, 2023
   Loretta Farnham, BOE Payroll, effective July 1, 2023
   Kelly Hogue, VES Educational Aide, effective June 5, 2023
   Sheila Greene, VES Intervention Specialist, effective June 7, 2023
   Brenda Zsebik, Bus Driver effective July 1, 2023

7. **One (1) Year Additional Duties Contract for the remainder of the 2022-2023 school year to:**
   Jason Bosch, Co-Esports Advisor, Level 18, Step 0
   Renee Myers, Experienced Teacher Mentor, Level 1, Step 0
   Renee Myers, NUHOP Overnight Chaperone, Level 0, Step 0
   Monica Hampton, NUHOP Overnight Chaperone, Level 0, Step 3
   Madyson Kessler, NUHOP Overnight Chaperone, Level 0, Step 1
   Kenneth Ryan, NUHOP Overnight Chaperone, Level 0, Step 6

8. **One (1) Year Supplemental Contract for the remainder of the 2022-2023 school year to:**
   Dana Fejedelem, SMS Softball, Level 14, Step 5
   Jessica Dickson, SMS Softball, Level 14, Step 6
   James Larizza, VHS Head Softball Coach, Level 24, Step 6

3.

Caleigh Holcomb, VHS Assistant Softball Coach, Level
Terrence Anders, VHS Head Boys Tennis, Level 24, Step 4
Terence Traut, VHS Assistant Boys Tennis, Level 15, Step 0
Timothy Clark, Co-Assistant Varsity Baseball, Level 15, Step 3
William Dillon, SMS Assistant Track Coach, Level 13, Step 2
Molly Anders, SMS Assistant Track Coach, Level 14, Step 0
Melissa Roberts, VHS Musical Production Assistant, Level 7, Step 0

9. **One (1) Year Supplemental Contract for the 2023-2024 school year to:**
Madelyn Nader, VHS Head Volleyball Coach, Level 29, Step 2
Matthew DeCapua, VHS Head Girls Soccer Coach, Level 23, Step 6

10. **Approve the update to experience level of the following contracts:**
Douglas Mihalic, Head Girls Basketball Coach from Step 0 to Step 4
Vernon Hector, Assistant Wrestling Coach from Step 0 to Step 6

11. **One (1) Year Classified Contract for the 2022-2023 school year:**
Cauletta Hrpcha, Substitute Bus Driver and Bus Monitor
Kristen Broeckel, Substitute Bus Monitor

12. **Five (5) Year Administrator Contract to:**
Justin Klingshirn, Treasurer beginning with the 2023-2024 school year.

13. Approve the payment from the youth wrestling donation fund of $333.33 each to Randall Krichbaum and Rob Bennett for helping with biddy wrestling.

14. Approve the payment from the bowling donation fund of $750.00 to Anthony Hugo for assisting with the bowling program.

**{¶ 5}** During the March 13, 2023 meeting, the Board Vice President read aloud the 14 items on the consent agenda, then asked if any member wanted to remove any item from the consent agenda for separate consideration. No board member moved to remove any item. The Board then passed the consent agenda with one vote for the 14 items.

**{¶ 6}** Minutes for the meeting were taken and published by the Board following the meeting. The minutes reflected that all 14 of the items under the consent agenda were

4.

approved. The minutes did not reflect any discussion from the board members regarding these 14 items. However, this was because there was no discussion by board members on the matters in the consent agenda.[1]

## B.     Procedural History

{¶ 7}   On May 28, 2024, Ames filed a Verified Complaint in Declaratory Judgment and Injunction for Enforcement of R.C. 121.22 against the Board. In his complaint, Ames made four claims against the Board for purported violations of R.C. 121.22 relating to (1) the use of a consent agenda to constructively close its March 13, 2023 meeting; (2) the failure to establish a rule for notification of public meetings in accordance with R.C. 121.22(F); (3) the holding of an executive session on May 15, 2023 in violation of R.C. 121.22; and (4) the failure to keep full and accurate minutes of its March 13 and May 15, 2023 public meetings.

{¶ 8}   In response, the Board filed an answer and motion for summary judgment arguing that there were no genuine issues of material fact because it did not violate the Open Meeting Act in its utilization of a consent agenda (among other issues not raised in this appeal). On March 5, 2025, Ames filed his own motion for summary judgment reiterating his argument from the complaint that by using a consent agenda, the Board constructively closed the March 13, 2023 meeting in violation of the Open Meetings Act.

---

[1] A video of the meeting provided by the Board confirms that the minutes accurately reflect that there was no discussion before board members voted to approve the Consent Agenda. The video can be accessed here: https://www.youtube.com/watch?v=69mckRU3mZ8&t=2329s.  The relevant portion of the meeting starts at the timestamp of 38:55, and ends at 42:45.

5.

{¶ 9}   On April 4, 2025, the trial court filed a Magistrate's Order acknowledging that Counts Two, Three, and Four of the complaint had been resolved by the parties, and that only Count One remained—whether the Board's use of a consent agenda constructively closed the March 13, 2023 meeting.

{¶ 10} On April 28, 2025, Ames filed a motion for leave to file a surreply.  Ames argued that the Board introduced new facts and raised a new defense in its motion for summary judgment.  Responding to the alleged new facts and defense, Ames argued that the Board violated its own policy in its use of the consent agenda.

{¶ 11} The trial court denied the motion.  In addition to finding that the surreplies were not allowed absent extraordinary circumstances—and that these were not extraordinary circumstances, the court contended that Ames had only raised the issue regarding violation of the Board's policy in his opposition to summary judgment, not his complaint, therefore consideration would be improper.  Turning briefly to the merits of the surreply, the court additionally found that "[w]hether Respondent violated its own policy here in the way it used a consent agenda is not tantamount to, and is unrelated to, the issue raised in the Complaint."

{¶ 12} On May 14, 2025, the trial court issued a Judgment Entry where it found no violation of the Open Meetings Act and no remaining questions of fact.  Accordingly, it granted summary judgment to the Board and denied it to Ames.

{¶ 13} Ames appealed both the summary judgment and the denial of his motion to file a surreply.  He now presents three assignments of error for our review:

FIRST ASSIGNMENT OF ERROR

6.

The trial court committed reversible error by denying Motion for Leave to File a Surreply to Respondent's Reply in Support Motion for Summary Judgment.

**SECOND ASSIGNMENT OF ERROR**

The trial court committed reversible error by granting summary judgment to Appellee.

**THIRD ASSIGNMENT OF ERROR**

The trial court committed reversible error by denying summary judgment to Appellant.

We will address the assignments of error out of order.

## II.     Law and Analysis

### A.     Summary Judgment Standard

{¶ 14} We review de novo the trial court's summary judgment determination, employing the same Civ.R. 56 standard as trial courts. *Chalmers v. HCR ManorCare, Inc.*, 2017-Ohio-5678, ¶ 21 (6th Dist.); *Hudson v. Petrosurance, Inc.*, 2010-Ohio-4505, ¶ 29. Civ.R. 56 provides that summary judgment may be granted only when it is demonstrated: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67 (1978); Civ.R. 56(C).

{¶ 15} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988),

7.

paragraph one of the syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79 (1984). The opposing party must do so using "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact…." Civ.R. 56(C). "A material fact is one that would affect the outcome of the suit under the applicable substantive law." *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304 (6th Dist. 1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 827 (8th Dist. 1996), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence would allow reasonable minds to find for the nonmoving party. *Id*.

### B. Second Assignment of Error

{¶ 16} In his second assignment of error, Ames challenges the trial court's summary judgment decision, arguing that the court erred when it granted summary judgment in favor of the Board and found no remaining material issues of fact.

{¶ 17} The crux of Ames' argument is essentially that the use of a consent agenda during the March 13, 2023 meeting effectively closed the meeting because it prevented members of the public from knowing which resolutions were being approved and hearing any deliberations on those resolutions.

8.

{¶ 18} As a reminder, the Board approved the 14 items on the consent agenda with a single vote. Prior to the meeting, the agenda was posted to the Board's website. At the meeting, the vote was conducted before the public, each item was read aloud, and board members were invited to remove any item from the consent agenda if they wanted more discussion on the matter. Following the meeting, the minutes were posted acknowledging the passing of the 14 item consent agenda.

> The purpose of the Open Meetings Act is "to require that public business be conducted in a manner that is accessible to the public." *State ex rel. More Bratenahl v. Bratenahl*, 2019-Ohio-3233, ¶ 15. The Open Meetings Act begins with the statement: "This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." R.C. 121.22(A). It directs that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(C). It further provides, "[a] resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body." R.C. 121.22(H).

*Ames v. Columbus City Sch.*, 2024-Ohio-3411, ¶ 12 (10th Dist.).

{¶ 19} To better understand the arguments made by the parties and the findings of the trial court, we must look directly at the limited case law relevant to the current issue.

{¶ 20} First, in *State ex rel. Ames v. Portage Cty. Bd. of Commr's*, 2021-Ohio-2374 (hereinafter "*Ames I*"), the Portage County Board of Commissioners held several meetings where the Board would meet and recess almost immediately to begin the meeting of the Portage County Solid Waste Management District Board of Commissioners ("SWMD"). *Id*. at ¶ 3-7. At the SWMD meetings, the Board would adopt a consent agenda containing an approval of minutes from the previous meeting and three resolutions. *Id*. There was no regular agenda business at the meetings. *Id*. After the

9.

approval of the consent agenda, the SWMD meetings would adjourn and the Board would resume its regular meeting. *Id*.

{¶ 21} Relator, also Brian Ames, alleged that the SWMD's use of a consent agenda effectively closed the SWMD meetings because it prevented members of the public in attendance at the meetings from knowing which resolutions were being approved and hearing any deliberations on those resolutions. *Id*. at ¶ 16. Ames took issue that the Board had approved multiple items in a single vote, and believed that while the vote was made during the public meeting, the public would not learn what resolutions the SWMD had adopted by consent agenda until the publication of the meeting minutes—which would contain the full text of the resolutions—after the meeting. *Id*. at ¶ 19. He asserted that by failing to inform the public which resolutions were being voted on, the Board effectively voted on the individual resolutions in secret. *Id*.

{¶ 22} The Supreme Court of Ohio found that "while the Open Meetings Act does not appear to prevent the board from using consent agendas as a general matter…" in that particular case, there remained a question of whether the Board's use of a consent agenda in that manner constructively closed the public meeting and was therefore, an impermissible end run around the Open Meetings Act. *Id*.

{¶ 23} Three years later, the Tenth District addressed this issue in *Ames v. Columbus City Sch.*, 2024-Ohio-3411 (10th Dist.) (hereinafter "*Ames II*"). In *Ames II*, the Columbus City School District Board of Education voted on a consent agenda that included a matter listed as the "Authority to Renew the District's Membership in the Ohio Coalition for Equity and Adequacy of School Funding and Voucher Litigation Dues." *Id*. 10.

at ¶ 4. During the meeting, the Board president asked if any member wanted to remove any item from the consent agenda for separate consideration and no member did. *Id*. at ¶ 6. After discussion, the Board adopted the consent agenda by a roll call vote. *Id*.

{¶ 24} Relator, again Brian Ames, filed a complaint alleging the Board of violating the Open Meetings Act by its use of a consent agenda to approve the payment of the District's annual membership dues to OCEASF. *Id*. at ¶ 7. The trial court granted the Board summary judgment and denied Ames summary judgment. *Id*. at ¶ 8.

{¶ 25} On appeal, Ames likened the case to that in *Ames I*. *Id*. at ¶ 13. The Tenth District, however, disagreed and noted that the real issue in *Ames I* was "the SWMD's failure to make public at the time of their meetings the specific resolutions they were voting on as part of the consent agenda. By keeping secret the resolutions being voted on, the SWMD arguably 'constructively close[d] its public meetings,' which could amount to a violation of the Open Meetings Act." *Id*. at ¶ 16. The Tenth District highlighted that the Columbus Board posted the entire agenda prior to the meeting, and consequently, the public knew about the resolutions and members of the public could sign up to comment on them during the meeting. *Id*. at ¶ 17. Thus, unlike *Ames I*, the Board in *Ames II* did not effectively close its public meeting by keeping secret the resolutions on the consent agenda. *Id*.

{¶ 26} As a secondary issue, the *Ames II* court further noted that while the consent agenda procedure did not foreclose discussion of the items on the consent agenda, and maintained that the Open Meetings Act does not require a public body to discuss every issue on which it votes, in that case, a committee meeting had previously taken place

where discussions on the contested matter were held *and then* the matter was taken to the Board on the consent agenda. *Id*. at ¶ 22. Accordingly, the Tenth District found that the trial court properly granted summary judgment to the Board and denied summary judgment to Ames. *Id*. at ¶ 25.

{¶ 27} Turning back to this case, the trial court found these facts more analogous to *Ames II*, where the agenda was made available to the public prior to the meeting through the publication on the District's website. As such, there was

> opportunity for the public to participate and discuss these items before the consideration and vote of the Board Members; the Board President read aloud through each of the items that were on the Consent Agenda; the Board President asked if any member wanted any of the items on the consent agenda removed for separate consideration/discussion. None of the Board Members so moved. A roll call vote was taken and the Consent Agenda passed 4-0 (one member absent).

{¶ 28} As an initial matter in our review, Ames makes two secondary arguments to his second assignment of error. First, Ames makes broad claims that the use of a consent agenda effectively closes public meetings. However, this is contrary to position of the Supreme Court that the Open Meetings Act itself does not require a total ban of the use of a consent agenda. *See Ames I*, 2021-Ohio-2374, at ¶ 19. Therefore, contrary to Ames' insinuation that the mere use of the consent agenda creates a violation, we must look at the specific facts of the case before us.

{¶ 29} Second, Ames takes issue with the lack of discussion and deliberation by the Board at the meeting. However, nothing in the Open Meetings Act requires a public body to discuss every issue on which the public body votes or engage in a prescribed

12.

amount of deliberation prior to a vote. *Ames II*, 2024-Ohio-3411, at ¶ 21 (10th Dist.). The key requirement of the Open Meetings Act is that the public must have meaningful access to any discussions that do take place barring an exception such as the permission to discuss in executive session. *See State ex rel. More Bratenahl v. Bratenahl*, 2019-Ohio-3233, ¶ 19; *Ames II* at ¶ 21; and *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 2022-Ohio-4237, ¶ 1 (holding that R.C. 121.22 "requires public bodies in Ohio to conduct all deliberations on official business in meetings that are open to the public.").

{¶ 30} As noted by the Board, Ames "makes no allegation, and has submitted no evidence, that the Board improperly discussed the March 13, 2023 consent agenda items in an unlawful executive session, or at a meeting that was not open to the public. Rather, he contends that by not engaging in a prescribed amount of deliberation on individual items on the consent agenda at its March 13, 2023 meeting, the Board violated R.C. 121.22." Because the Board was not required to engage in discussion, and Ames makes no attempt to allege the existence of improper private discussion, we find Ames' argument lacking merit.

{¶ 31} Turning now to Ames' primary argument regarding his second assignment of error. Contrary to the trial court's decision that this case is similar to *Ames II*, Ames argues that it is really more analogous to *Ames I*. He contends that unlike in *Ames II*, there were no other meetings where the items were discussed. Additionally, in *Ames II*, the consent agenda covered only single item, which was not a policy, while the consent agenda in *Ames I* covered several items—which Ames finds more factually similar to this case. As such, Ames contends that the Board violated the Open Meetings Act, or at the

13.

very least, that this court should reverse the trial court's finding of summary judgment for the Board. We disagree.

{¶ 32} Here, the Board published the March 13, 2023 consent agenda on its website ahead of the meeting like the Board in *Ames II*. Additionally, the Vice President read the entire consent agenda aloud for all in attendance to hear and permitted board members to remove any item from the consent agenda for discussion. While there were more items on the consent agenda in this case compared to the consent agenda in *Ames II*, the fundamental requirement of ensuring public access was protected here, unlike in *Ames I* where the public could only find out what had been voted on *after* the meeting, when the minutes were published. Accordingly, the Board in this case, like the Board in *Ames II*, did not keep secret its consent agenda items. *See Ames II*, 2024-Ohio-3411, at ¶ 17 (10th Dist.).

{¶ 33} Based on this court's review of the record, we agree with the trial court's determination that this case is more akin to *Ames II*, and affirm its finding that there are no genuine issues of material fact with respect to Ames' claim of an Open Meetings Act violation. Accordingly, we find Ames' second assignment of error not well-taken.

## C. Remaining Assignments of Error

{¶ 34} Ames' first and third assignments of error arise from the same foundational argument—that the trial court erred when it rejected Ames' alternative argument that the Board violated its own policy. The two assignments of error will be analyzed separately, however, in order to understand both assignments of error and whether Ames properly

14.

raised his argument about the policy violation, we must first review the filings from the trial court.

{¶ 35} In his complaint, Ames raised four issues—all of which were settled except whether the Board constructively closed its March 13, 2023 meeting by the use of a consent agenda in violation of the Open Meetings Act, R.C. 121.22.

{¶ 36} In the Board's motion for summary judgment, the Board noted that pursuant to Board Policy 0166 "Agendas", it "may use a consent agenda to effectively address routine matters.  Items on the consent agenda will be reviewed during the meeting prior to action being taken."  Additionally, the Board likened the use of the consent agenda to the one at issue in *Ames II*.  It noted that like in *Ames II*, prior to the meeting at issue, the Board posted its agenda on its website and included the consent agenda; then during meeting, Board leadership gave members the opportunity to remove an item for separate consideration.  Afterward, a single vote was held for the whole consent agenda, and all items were approved.

{¶ 37} The Board noted that while the minutes did not reflect any discussion held by the Board on the 14 matters, that was because there were no deliberations, statements or sentiments made by the members during the meeting and therefore no deliberations or discussions were kept from the public.

{¶ 38} Ultimately, the Board argued that its use of the consent agenda "to efficiently act upon routine matters" was fully compliant with the Open Meetings Act, and as such, the Board was entitled to summary judgment as a matter of law.

15.

{¶ 39} In opposition, Ames argued that *Ames II* was distinct to the fact pattern in this case—notably that *Ames II* concerned a discretionary adoption of a resolution to pay annual dues versus the approval of policies under the Board's mandatory legislative duties. Additionally, he argued that in *Ames II*, the court held that discussions from a prior meeting sufficed for purposes of the OMA, while here, there was no evidence of any discussion of the 14 items. Ames contended that "[w]ithout an exchange of views among the members of a public there is no discussion. Since discussion is a critical element of a meeting, there is no meeting absent an exchange of views. The use of a consent agenda, whose very purpose is to foreclose discussion of so-called routine matters, is antithetical to the conduct of a meeting." Ames emphasized his position that no discussion deprived the public's right to know why its government did what it did. Therefore, Ames claimed that the meeting was constructively closed by the use of a consent agenda.

{¶ 40} As a secondary issue, Ames took issue with the Board's use of a new affidavit and reliance on its policies. He argued that the Board members neglected their duty under R.C. 3313.10 by using a consent agenda to approve technical corrections to Policies 5112 and 5122.05, and that the adoption of new policies via consent agenda at the meeting was actually a violation of the Board's own policies.

{¶ 41} In its reply, the Board disagreed with all of Ames' claims. First, the Board argued that the *Ames II* court did *not* determine that the consent agenda was permissible because of prior discussions—rather that the *Ames II* court found the use of the consent agenda permissible because it was publicized prior to the meeting. The Board noted that

16.

this was the same action taken in this case. Next, the Board took issue with Ames' belief that there was insufficient discussion and argued that there are no pre-determined requirements that a public body *must* deliberate and exchange views on agenda items in order for a meeting to be considered open to the public.

{¶ 42} As a separate matter, the Board argued that Ames was attempting to raise new claims without amending his complaint in his repeated references to possible policy violations. As such, the Board asked the trial court to ignore Ames' new claims, arguing that they should have been brought through a motion to amend his pleadings. However, the Board additionally argued that even if the trial court were to address the claims, its Policy 0131.1 "Technical Corrections" permitted technical corrections to pre-existing policies to "be accomplished by resolution as part of the consent agenda without going through the normal policy adoption procedure." Therefore, contrary to Ames' allegations, the Board argued that it did not violate its policies to approve technical corrections to Policies 5112 and 5122.05. The Board further argued that there was no evidence of neglect.

{¶ 43} Following the close of briefing, Ames filed a motion for leave to file a surreply to supplement his "Motion for Summary Judgment as to Count 1 of his Complaint." He argued that the Board introduced new facts, evidence, and a new defense in its reply brief. Specifically, Ames took issue with the Board's argument that Board Policy 0131.1, Technical Corrections, expressly permitted it to utilize a consent agenda to make technical corrections to its policies with the implication that the changes to Board Policies 5112 and 5112.05 were merely technical corrections. He argued that the changes

17.

to policies made at the March 13, 2023 meeting were far more than technical corrections and as such, the Board violated its own policies when it changed its policy via consent agenda. Ames then reiterated that this violation of the Board Policy violated R.C. 121.22 as set forth in Count One his complaint.

{¶ 44} On April 29, 2025, the trial court denied Ames' motion to file a surreply, noting that (1) the court does not allow surreply briefs except in extraordinary circumstances, which was not the case here; (2) the non-oral hearing date on the Board's motion for summary judgment had passed, and the court already had drafted its decision; and (3) the basis for Ames' motion for leave—to address his newly raised argument that the Board violated its own policy in the way it used a consent agenda, was not pled or otherwise raised previously, nor was it tantamount to, and was unrelated to, the issue raised in his complaint—whether the Open Meetings Act was violated. The court stated that "it is well established that a plaintiff may not rebut a motion for Summary Judgment by merely raising new theories of recovery in its response opposing Summary Judgment."

{¶ 45} Shortly after, the court issued its Judgment Entry granting the Board summary judgment and denying Ames summary judgment. In the decision, the court noted that "Relator attempted in response to Summary Judgment to expand his case to a violation of Respondent's own policy. This was not pled and it is not appropriate on Summary Judgment to for the first time adopt a new theory. The issue here was whether the use of the Consent Agenda violated the Ohio Open Meetings Act."

18.

### i.  Third Assignment of Error

{¶ 46} With the background established, we turn now to Ames' third assignment of error.  Here, Ames again challenges the trial court's summary judgment decision—this time arguing that the court erred when it denied his motion for summary judgment and that there are no remaining questions of fact, therefore the trial court should have granted summary judgment in his favor.

{¶ 47} Ames does not elaborate on why he should have been granted summary judgment, instead, he claims that the trial court erroneously rejected his argument that the Board violated its own policy.  He believes that he trial court misapprehended his purpose of raising the issue and argues that notice pleading does not require the pleading of all theories that may or may not arise as a case proceeds.  Additionally, Ames contends that a public body's violation of its own policy is not actionable in and of itself under R.C. 121.22.  As such, he believes that he did not need to plead the Board's violation of its own consent agenda policy in his complaint.  Contrarily, the Board argues that Ames' arguments about the Board's policy were a new theory improperly raised in his reply opposing summary judgment.

{¶ 48} Parties are required to raise their claims in their pleadings and Civ.R. 8(A) provides parties with the requirements for presenting claims for relief.

> The pleading must contain: '(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled.' Civ.R. 8(A). This is known as notice pleading. One of the basic purposes of notice pleading is to insure, 'that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto.' *Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 83, 455 N.E.2d 1344.

19.

*Scassa v. Dye*, 2003-Ohio-3480, ¶ 26 (7th Dist.).

{¶ 49} However, "Civ.R. 8(A) does not require the plaintiff to plead the legal theory of recovery." *White v. Mt. Carmel Med. Ctr.,* 2002–Ohio–6446, ¶ 29 (10th Dist.), citing *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512 (1994), paragraph six of the syllabus. This is because a "plaintiff is not 'bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief.'" (Cleaned up.) *Id.*

{¶ 50} That being said, "[a] plaintiff cannot fulfill [their] burden under Civ.R. 56 merely by asserting new claims in response to a properly supported motion for summary judgment." *Bradley v. Sprenger Enters., Inc.*, 2008-Ohio-1988, ¶ 8 (9th Dist.), citing *Mt. Carmel Med. Ctr.* at ¶ 30; *see also Karsnak v. Chess Fin. Corp.*, 2012–Ohio 1359, ¶ 48 (8th Dist.) ("Generally, a plaintiff cannot enlarge her claims during a defense to a summary judgment motion…."); *Aronhalt v. Castle*, 2012-Ohio-5666, ¶ 26 (10th Dist.) ("A plaintiff cannot fulfill its Civ.R. 56 burden by merely raising new grounds for recovery in response to a properly supported motion for summary judgment… A plaintiff must respond to a motion for summary judgment based on the claims already presented rather than surprise the defendant and court with new theories of recovery."); *Greene v. Whiteside*, 2009-Ohio-741, ¶ 28 (1st Dist.); and *Scassa*, 2003-Ohio-3480, at ¶ 27 (7th Dist.).

{¶ 51} New claims must be brought through a motion to amend the pleadings under the Rules of Civil Procedure. "[R]eply briefs are restricted to matters in rebuttal, not new arguments." *Lawson v. Mahoning Cnty. Mental Health Bd.,* 2010–Ohio–6389, ¶ 20.

50 (7th Dist.). Using reply briefs to assert new claims, "if successful, would permit every nonmoving party-plaintiff to avoid summary judgment by simply asserting different claims based on different substantive law with different material facts." *Bradley* at ¶ 8. Allowing a new argument to be asserted in a reply has been characterized as "summary judgment by ambush." *Intl. Fid. Ins. Co. v. TC Architects, Inc.,* 2006–Ohio–4869, ¶ 11 (9th Dist.), quoting *Collins v. Emro Marketing, Co.*, No. 98AP–1014, 2 (10th Dist. 1999).

{¶ 52} Here, the trial court did not err when it found that Ames had attempted to expand his theory that the Board violated the open meetings act when he argued that the Board violated its own policy. While Ames is correct that notice pleadings are not so rigid as to require the pleading of all theories that may or may not arise as a case proceeds—i.e., that parties are not strictly bound to the four corners of what they claim in a pleading—his allegations that the Board's violation of its own policy in the way it used a consent agenda was, as the trial court put it, "not tantamount to, and was unrelated to, the issue raised in his complaint"—whether the Board's *use of a consent agenda* constructively closed the meeting and therefore, whether the constructive closing was a violation of the Open Meetings Act. Adding an argument of a policy violation is not a minor expansion or development of an already pled theory, it is a new theory in itself and was not properly pled.

{¶ 53} Accordingly, we find Ames' third assignment of error not well-taken.

### ii. First Assignment of Error

{¶ 54} Turning now to the first assignment of error, Ames argues that the trial court erred in denying his request to file a surreply.

21.

**{¶ 55}** "The Ohio Rules of Civil Procedure have no provision for filing a surreply to a motion for summary judgment." *Perlmutter v. People's Jewelry Co.*, 2005-Ohio-5031, ¶ 4, fn. 1 (6th Dist.). Accordingly, it is within the discretion of the trial court whether to grant such a motion. *First Fin. Servs., Inc. v. Cross Tabernacle Deliverance Church, Inc.*, 2007-Ohio-4274, ¶ 38-39 (10th Dist.), citing *Morris-Walden v. Moore*, 2007-Ohio-262, ¶ 27 (8th Dist.); *Hill v. At Home Stores, LLC*, 2023-Ohio-2798 ¶ 16 (6th Dist.). An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 56}** In his current brief, Ames reiterates the same argument made before the trial court that the Board raised new facts in its reply and therefore, he was "warranted" the ability to file a surreply brief to address the new facts and defense.

**{¶ 57}** We have reviewed Ames' motion for leave, and we find that the trial court could have reasonably concluded that the proposed filing did not add anything new, nor did it include matters that could not have been raised in its initial response to the motion for summary judgment. Accordingly, it was within the discretion of the trial court whether to grant Ames' motion for leave to file a surreply. *See Hill v. At Home Stores* at ¶ 24, citing *First Fin. Servs., Inc.* at ¶ 38-39 , citing *Morris-Walden v. Moore* at ¶ 27.

**{¶ 58}** Furthermore, even if there was a question whether the trial court erred in its conclusion to deny leave, as noted by the Board in their brief before this court, the trial court nevertheless addressed the merits of Ames' surreply despite denying leave. The court looked at whether the violation of the Board's policies was indicative of a violation of the Open Meetings Act and found the argument unpersuasive. Having already

22.

addressed this argument when reviewing Ames' third assignment of error, we see no error in the trial court's decision on the merits of Ames' surreply.

{¶ 59} In sum, having found no evidence that the trial court abused its discretion in denying Ames' motion, we find his first assignment of error not well-taken.

### III.    Conclusion

{¶ 60} For the foregoing reasons, we find Ames' assignments of error not well-taken, and we affirm the May 14, 2025 Judgment Entry of the Erie County Court of Common Pleas.  Ames is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.

JUDGE

Christine E. Mayle, J.

JUDGE

Gene A. Zmuda, J.
CONCUR.

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

23.